**Kaaryn SMITH, et al., Plaintiffs,**

v.

**Robert L. MATTHEWS,
et al., Defendants.**

**No. 88–3265–R.**

United States District Court,
D. Kansas.

May 18, 1992.

Kaaryn L.J. Smith, pro se.

Tony Smith, pro se.

D. Brad Bailey, Office of U.S. Atty., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is before the court on defendants' motion to dismiss, or in the alternative, for summary judgment. Plaintiff Tony Smith is currently incarcerated in United States Penitentiary, Terre Haute, Indiana, and filed this *Bivens* action against the warden of United States Penitentiary in Leavenworth, Kansas (USPL). Tony and wife (Kaaryn) and daughter (Toni) complain that Tony's visitation rights were wrongfully terminated while Tony was incarcerated in USPL. Plaintiffs seek declaratory judgment, injunctive relief, and damages for the alleged constitutional violations.[1] Plaintiffs proceed against defendants in defendants' individual and official capacities. Having reviewed the record, the court finds defendants are entitled to summary judgment on all claims.

*Factual background*

On September 4, 1987, Kaaryn and Toni arrived at USPL to visit Tony. Federal Bureau of Investigation agent Rymill suspected Kaaryn of attempting to introduce narcotics into the institution.[2] Kaaryn was informed that her visit would be terminated unless she consented to a strip search. Kaaryn consented to the search, but before

---

1. Plaintiffs' claims for injunctive relief are rendered moot by Tony's transfer from USPL in 1989. *See Martin v. Sargent,* 780 F.2d 1334 (8th Cir.1985) (claim for injunctive relief moot if no longer subject to conditions).

2. FBI suspicion arose from an investigation of four women involved in smuggling narcotics into USPL. A search of one of the other three women yielded drugs and other contraband.

it was completed, stopped the procedure. Rymill left to obtain a search warrant that had been issued that day, and Kaaryn consented to be further searched. No contraband was found. Thereafter, when Kaaryn attempted to visit Tony, she was told that her visitation was terminated. She was given the same answer when she attempted to visit her brother, another inmate in USPL.

In November 1987, Tony appeared before an Institution Disciplinary Committee (IDC) and was informed that no incident report would be issued, but that his wife was to be removed permanently from his visitation list. Tony administratively appealed this decision without any success. Tony was transferred to the United States Penitentiary, Terre Haute, Indiana, in 1989.

Plaintiffs set forth eleven separate grounds in their amended complaint. The alleged constitutional violations center on their claims that defendants' search of Kaaryn and Toni violated constitutional protections against unreasonable search and against arrest without probable cause. They also claim violations of their liberty interests in visitation and familial association, and of their rights to due process. Although styled as constitutional issues, Kaaryn also complains of assault, defamation, and intentional infliction of emotional distress. She also maintains she was subjected to cruel and unusual punishment.

*Discussion*

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). In the present case, the court finds no serious factual dispute. Rather, the controversy involves a legal determination of whether plaintiffs' constitutional rights were violated by defendants' actions. Plaintiffs claim the permanent restriction of Kaaryn's visitation at USPL violated their rights to liberty and

freedom of association.[3] The court finds no merit to this claim.

■ It is clear that Tony has no absolute right to visitation. *Crozier v. Shillinger*, 710 F.Supp. 760, 764 (D.Wyo.1989). An inmate's visitation is subject to prison regulation, and such regulation is valid if reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In this case, prison officials suspected that Tony and Kaaryn were part of a plan to bring narcotics into the facility. There is no question that prison officials have a legitimate interest in controlling narcotics in the prison. The "unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country." *Block v. Rutherford*, 468 U.S. 576, 588–89, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438 (1984).

■ Kaaryn has no constitutionally-shielded liberty interest in visiting Tony. Liberty interests do not arise when a person is barred from visiting a prison. *Fennell v. Carlson*, 466 F.Supp. 56, 59 (D.Okla.1978). There is no general right to prison visitation for either prisoners or the public. *Id.* Incarceration is "one of those situations where third party rights must fall with the lawful loss of the correlative right." *White v. Keller*, 438 F.Supp. 110, 119 (D.Md.1977), *aff'd* 588 F.2d 913 (4th Cir.1978). "[T]he person with the primary stake in the deprivations caused by imprisonment is the prisoner himself, and he rather than his relatives is the proper party to complain about those deprivations." *Mayo v. Lane*, 867 F.2d 374, 376 (7th Cir.1989). In *Mayo*, prison officials permanently restricted visitation by an inmate's wife after finding a large quantity of marijuana in the restroom used by the wife. That court rejected any claim that the wife's natural liberty interest was infringed when she was not allowed to enter the prison. *Id.* at 375. The wife's claim that she was denied her right of association with family members was considered and also rejected. *Id.*

---

**3.** The court finds no reason to separate Kaaryn and Toni in its consideration of the issues raised

in this action.

at 375–76. *See also Thorne v. Jones,* 765 F.2d 1270 (5th Cir.1985) (no absolute right under first amendment for mother to visit inmate sons).

■ Nor can Kaaryn show any protected interest was created by prison regulations. It is within the warden's discretion to authorize a visual search if there is reasonable suspicion a visitor is attempting to introduce contraband into the institution. 28 C.F.R. § 511.12(d). A reasonable suspicion can be based on reliable confidential information. 28 C.F.R. § 511.11(a). The warden is granted wide discretionary authority to deny visiting privileges when there is *any* suspicion a visitor is attempting to introduce contraband and controlled or closely supervised visitation is not possible. 28 C.F.R. § 511.13(a) and (b). Having closely examined the applicable regulations, the court finds the discretion granted prison officials is broad and not significantly curtailed, and further finds no liberty interest is created. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 464–65, 109 S.Ct. 1904, 1910–11, 104 L.Ed.2d 506 (1989) (absent requisite and relevant mandatory language, prison regulations did not establish liberty interest entitled to due process protection). *See also, Patchette v. Nix,* 952 F.2d 158 (8th Cir. 1992) (mandatory state administrative code created liberty interest in visitation). There is a mandatory regulation which requires that staff deny a visitor admission to the institution if the visitor refuses to undergo a search dictated under the rules. 28 C.F.R. § 511.13(c). This was done in this case.

■ The record does not support Kaaryn's claim that the warden acted arbitrarily and capriciously in permanently restricting her visitation. It is clear that Kaaryn refused to complete the first search by prison officials. The fact that she later consented to a second or further search, and the fact that no contraband was found, do not negate the potential consequences of her first refusal.

■ The court also rejects Kaaryn's claim that the searches were unreasonable under the fourth amendment. Other circuits have held that strip searches are reviewed for reasonableness. *See e.g., Daugherty v. Campbell,* 935 F.2d 780, 784–87 (6th Cir.1991) (fourth amendment violation if no reasonable suspicion exists for search). In the present case, there was reliable and confidential information of a drug smuggling scheme that included Tony and Kaaryn. The information was sufficient for a district court judge to find probable cause for a body search and to issue a warrant for a body search. The court finds the searches were lawful and reasonable under the facts.[4]

Tony's claim that the restriction of visitation was arbitrary and unwarranted because he was never issued a disciplinary report on the drug smuggling scheme is without merit. The record clearly establishes that the termination of Kaaryn's visitation was not a disciplinary sanction.[5] On September 4, 1987, Kaaryn's visitation privileges were suspended pending further investigation of her alleged activities in narcotic trafficking. In December 1987, the permanent termination of her visitation was based on her refusal to be fully searched, and on the results of the investigation. *Long v. Norris,* 929 F.2d 1111 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991), is a similar case where inmates complained their wives or fiancees would not be allowed to visit because these visitors refused to submit to strip and body cavity searches. However, in *Long,* unlike the present case, there is no indication prison officials had search warrants for the objected to searches. Here, the search was authorized, Kaaryn's

---

4. Kaaryn also consented to the searches, but claims her consent was coerced. Kaaryn clearly revoked her consent when she stopped the first search. The court does not rely on her consent in assessing the reasonableness of that search. The search warrant provided more than reasonable suspicion for both searches. Whether she freely consented to the second search, therefore, also is not material.

5. There is no claim that Tony's rights to visits from other visitors was affected. This case centers on defendant's conduct regarding Kaaryn's visitation privileges.

refusal to be completely searched was without justification, and the consequential termination of her visitation privileges did not violate prison visitation regulations applicable to Kaaryn or Tony. Kaaryn's remaining claims, including defamation, assault, and intentional infliction of emotional distress, are broad and conclusory, and do not involve claims of constitutional dimension.[6] Thus, such claims are not cognizable in this *Bivens* action. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (§ 1331 permits action against federal defendants based on violation of plaintiff's constitutional rights).

Finding no merit or support in the record for plaintiffs' legal claims and arguments, the court grants defendants' motion for summary judgment.

IT IS ORDERED that defendants' motion for summary judgment is granted, and that all relief requested by plaintiffs is denied. The clerk of the court is directed to transmit copies of this Memorandum and Order to plaintiffs and to the United States Attorney.

---

**6.** The court specifically rejects Kaaryn's claims based on the eighth amendment. The eighth amendment proscription against cruel and unusual punishment applies only after a criminal conviction. *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375, 1377 n. 2 (10th Cir.), *cert. denied,* 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985).